UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLIVER BRUCKAUF, *as Parent and Natural Guardian of E.B., a minor*, and OLIVER BRUCKAUF, *Individually*,

Plaintiffs,

-v.-

NEW YORK CITY DEPARTMENT OF EDUCATION and KAMAR H. SAMUELS, *in his official capacity as Chancellor of NYC Department of Education*,[1]

Defendants.

25 Civ. 420 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

This case is one of dozens in this District — all brought by the same law firm — in which parents of students attending the International Institute for the Brain ("iBRAIN"), a private school accepting public funds, have sued the New York City Department of Education and its Chancellor (collectively, "DOE" or "Defendants"). In this particular action, Oliver Bruckauf, individually and on behalf of his minor child E.B.,[2] challenges a December 9, 2024 decision by a New York State Review Officer ("SRO"), which decision dismissed a Due Process Complaint ("DPC") that Mr. Bruckauf had filed.

Mr. Bruckauf raises claims under (i) the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 (the "IDEA"); (ii) Section 504 of the

---

[1]     The First Amended Complaint (the "FAC") originally named Melissa Aviles-Ramos as a Defendant in her official capacity as Chancellor of the New York City Department of Education. Kamar H. Samuels is the current chancellor and is automatically substituted as a party under Federal Rule of Civil Procedure 25(d).

[2]     While Mr. Bruckauf is technically named in two capacities in the FAC, the Court adopts his convention of referring to himself as "Plaintiff."

Rehabilitation Act, 29 U.S.C. § 794; (iii) Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12165 (the "ADA"); and (iv) 42 U.S.C. § 1983 for due process violations.  Before the Court now is DOE's motion to partially dismiss the First Amended Complaint (the "FAC").  Specifically, DOE moves to dismiss Plaintiff's claims under (i) Section 504, (ii) the ADA, and (iii) Section 1983.  For the reasons set forth below, the Court grants Defendants' motion.

**BACKGROUND**[3]

## A.    E.B.'s State Administrative Proceedings

Plaintiff Oliver Bruckauf is the parent and natural guardian of E.B., a 16-year-old student with a disability.  (FAC ¶¶ 13-14).  For the 2023-2024 school year, Plaintiff filed a DPC asserting that DOE had failed to provide E.B. with a free appropriate public education (a "FAPE").  (*Id.* ¶ 19).  *See* 34 C.F.R. § 300.101 (establishing the requirements of a FAPE).  On September 16, 2023, an Impartial Hearing Officer ("IHO") entered a decision finding that DOE had in fact failed to provide E.B. with a FAPE for the 2023-2024 school year and that her unilateral placement at iBRAIN was therefore appropriate.  (*Id.* ¶ 20).

---

[3]    This Opinion draws its facts from the First Amended Complaint ("FAC" (Dkt. #17)), the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  The Court also relies, as appropriate, on certain of the exhibits attached to the FAC and incorporated therein.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  In particular, the Court relies on a July 2, 2024 IHO Decision ("IHO Dec." (Dkt. #17-1)) and a December 9, 2024 SRO Decision ("SRO Dec." (Dkt. #17-3)).

However, the IHO reduced the award of funding for E.B.'s transportation and nursing services. (*Id.*).

Plaintiff appealed to the SRO the portion of the IHO's decision that reduced funding for transportation and nursing services. (FAC ¶ 21). On December 1, 2023, the SRO reversed the IHO's reduction in transportation and nursing funding. (*Id.* ¶ 22). DOE did not appeal from the December 1, 2023 decision. (*Id.* ¶ 23).

Thereafter, on July 2, 2024, Plaintiff filed a new DPC alleging numerous procedural and substantive violations of the IDEA with respect to the 2024-2025 school year. (FAC ¶ 24). On July 11, 2024, DOE emailed Plaintiff, scheduling a resolution meeting for the following day. (*Id.* ¶ 27). Plaintiff's counsel responded, informing DOE that counsel would attend on behalf of Plaintiff. (*Id.* ¶ 28). Plaintiff's next allegation, which appears to skip some key events, is that DOE emailed Plaintiff on July 17, 2024, suggesting two different dates for the resolution meeting. (*Id.* ¶ 29).

While Plaintiff's allegations are noticeably (if not deliberately) imprecise, what is clear is that Plaintiff never attended a resolution meeting with the district. (*See* SRO Dec. 7 (explaining the district's unsuccessful efforts to get Plaintiff to attend the resolution meeting)). Indeed, the SRO found that after initially making equivocal statements about his participation, Mr. Bruckauf, through counsel, canceled the meeting. (*Id.*).

On July 24, 2024, DOE submitted its response to Plaintiff's DPC. (FAC ¶ 33). On August 2, 2024, DOE moved to dismiss the DPC based on Plaintiff's

3

alleged failure to attend the resolution meeting.  (*Id.* ¶ 34).  Six days later, Plaintiff's counsel submitted an opposition.  (*Id.*).  On August 23, 2024, the IHO granted DOE's motion and dismissed the DPC without prejudice, holding that the statute required the parent to attend the resolution meeting and noting that Plaintiff "ha[d] not engaged … in good faith."  (IHO Dec. 5-6; *see also* FAC ¶¶ 36-37 (acknowledging the order of dismissal while noting that it "failed to address E.B.'s pendency placement or her right to pendency")).

On October 2, 2024, Plaintiff appealed the IHO's decision to the SRO. (FAC ¶ 38).  The SRO upheld the decision of the IHO in all respects on December 9, 2024.  (*Id.* ¶ 40).  SRO Bates determined that the district had made reasonable efforts to obtain Plaintiff's participation in the resolution meeting and that "the IHO did not err in concluding that the parent did not participate because the parent, through his attorney, cancelled the first meeting … , and when the matter was rescheduled, the parent failed to attend." (SRO Dec. 7).

**B.    Other iBRAIN Students' Experiences with July 2024 Resolution Meetings**

As substantiation for his non-IDEA claims, Plaintiff includes allegations in the FAC regarding *other* iBRAIN parents' experiences with resolution meetings.  (*See* FAC ¶¶ 74-111).  Allegedly, parents of iBRAIN students who are plaintiffs in five other federal actions (collectively, the "Resolution Meeting Parents") also filed individual DPCs on or about July 2, 2024, each requesting that DOE timely conduct a resolution meeting.  (*Id.* ¶¶ 75-77).  From there,

events proceeded on two parallel tracks, one for iBRAIN's Manhattan students and one for its Brooklyn students. (*See id.* ¶¶ 83, 89).

### 1. The Manhattan Students

On July 11, 2024, Kelly Agnello, a social worker from Committee on Special Education ("CSE") District 9, the Manhattan students' school district, reached out to schedule resolution meetings with the relevant parents beginning at 9:30 a.m. the next morning. (FAC ¶¶ 83-84). That same day, the Resolution Meeting Parents' counsel confirmed attendance and asked for a list of participants in the resolution meetings. (*Id.* ¶ 85). Counsel allegedly received no response and subsequently reached out to other district representatives. (*Id.* ¶¶ 86-88).

When the resolution meetings began the next morning, the Resolution Meeting Parents did not attend. (FAC ¶ 93). Instead, their counsel appeared, and CSE District 9 was allegedly represented by (i) Ms. Agnello and (ii) Mariama Sandi. (*Id.* ¶¶ 93-94). Neither Ms. Agnello nor Ms. Sandi was a part of the students' "CSE team," nor did they have authority to address the students' pendency claims or to bind DOE to fund students' attendance at iBRAIN. (*Id.* ¶ 94).

Ms. Agnello and Ms. Sandi allegedly confirmed that they were the only two DOE representatives participating in the July 12, 2024 resolution meetings. (FAC ¶ 95). At that point, the Resolution Meeting Parents' counsel canceled the meetings and requested they be rescheduled at a mutually

agreeable time with district representatives who had authority to resolve all matters in the parents' DPCs.  (*Id.* ¶¶ 96-97).

### 2.    The Brooklyn Students

On July 11, 2024, the same day as Ms. Agnello's initial email, the Resolution Meeting Parents' counsel received an email from Alicia A. Holmes, the Special Education Evaluation Placement Program Officer for CSE District 8, the Brooklyn students' school district.  (FAC ¶ 89).  The email indicated that resolution meetings had occurred, and that agreements had been reached.  (*Id.* ¶ 90).  The next day, July 12, 2024, counsel for the Resolution Meeting Parents sent a "cease and desist" email to CSE District 8 representatives.  (*Id.* ¶ 92).

On July 16, 2024, the Resolution Meeting Parents' counsel held a meeting with Ms. Holmes.  (FAC ¶ 101).  Ms. Holmes, like Ms. Agnello and Ms. Santi, allegedly lacked the authority to address all of the issues that the Resolution Meeting Parents raised in their DPCs.  (*Id.* ¶ 102).  At the meeting, Ms. Holmes informed the Resolution Meeting Parents' counsel that it was standard practice at CSE-8 for her to be the sole representative on calls with parents, and that her authority was limited.  (*Id.* ¶ 103).  The Resolution Meeting Parents' counsel deemed this insufficient and refused to move forward with any resolution meeting until different representatives participated in the meetings.  (*Id.* ¶ 104).  Of potential note, the parties never rescheduled the resolution meetings for either the Manhattan or the Brooklyn students.  (*Id.* ¶ 105).

### C.    Federal Court Proceedings

On January 15, 2025, Plaintiff filed an appeal of the December 9, 2024 SRO decision affirming dismissal of E.B.'s DPC in this Court.  (Dkt. #1, 4). Specifically, Plaintiff argues that the SRO erred by upholding the IHO's dismissal of Plaintiff's DPC due to Plaintiff's failure to appear.  (FAC ¶¶ 44-46). Plaintiff also seeks the entry of a pendency order for the 2024-2025 school year.  (*Id.* ¶¶ 47-48).  Finally, Plaintiff argues that the SRO overlooked DOE's failure to comply with certain parental notification regulations 34 C.F.R. § 300.510(b)(4).  (*Id.* ¶¶ 49-50).  Based on these allegations, Plaintiff asserts causes of action under (i) the IDEA (*id.* ¶¶ 51-59), (ii) Section 504 of the Rehabilitation Act (*id.* ¶¶ 60-65), (iii) the ADA (*id.* ¶¶ 66-71), and (iv) Section 1983 for a deprivation of civil rights (*id.* ¶¶ 72-113).

Defendants answered the Complaint on March 29, 2025.  (Dkt. #14).  On June 10, 2025, Plaintiff filed the FAC, the operative pleading in this matter. (Dkt. #17).  On June 24, 2025, Defendants filed a letter informing the Court of their intention to move to partially dismiss the FAC.  (Dkt. #20).  Plaintiff responded six days later.  (Dkt. #21).  On July 18, 2025, the Court set a briefing schedule for Defendants' partial motion to dismiss.  (Dkt. #22). Defendants timely filed their motion on August 12, 2025, along with a memorandum of law in support thereof.  (Dkt. #23-24).  Plaintiff filed his opposition on August 26, 2025.  (Dkt. #25).  Defendants filed their reply on October 3, 2025 (Dkt. #30), thus concluding briefing on the instant motion.

7

## DISCUSSION

**A.    Motions to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

Under Rule 12(b)(6), a defendant may seek dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must "draw all reasonable inferences in Plaintiff['s] favor, 'assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.'" *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). That said, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Walsh* v. *Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 483 (S.D.N.Y. 2019) internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)). "[W]hen documents attached to the complaint as exhibits or incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true." *Wimberly* v.

*Experian Info. Sols.*, No. 18 Civ. 6058 (MKV), 2021 WL 326972, at \*3 (S.D.N.Y. Feb. 1, 2021) (internal quotation marks omitted) (quoting *Endemann* v. *Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019)).

A plaintiff can overcome a Rule 12(b)(6) motion if the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [Plaintiff's] claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## B.    Plaintiff Fails to State Claims Under Title II of the ADA or Section 504 of the Rehabilitation Act

### 1.    The ADA and Section 504 in the Education Context

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"Because the standards under both statutes are generally the same and the subtle distinctions between the statutes are not implicated in this case, '[this Court will] treat claims under the two statutes identically.'" *Wright* v. *N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting *Henrietta D.* v. *Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)); *accord Derek S.* v. *Ballston Spa Cent. Sch. Dist.*, No. 25-668, 2025 WL 3552714, at *1-2 (2d Cir. Dec. 11, 2025) (summary order) (observing that claims under Title II of the ADA and Section 504 are "'consider[ed] ... together' because their 'standards ... are nearly identical,'" and, further, that such claims "sometimes run parallel to the IDEA, which is more narrowly 'designed to ensure that all children with disabilities have available to them a [FAPE]'" (second and third alterations in original) (first quoting *McElwee* v. *County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012); then quoting *A.R.* v. *Conn. State Bd. of Educ.*, 5 F.4th 155, 157 (2d Cir. 2021))).

"A plaintiff who raises a disability discrimination claim bears the initial burden of establishing a prima facie case." *Torres* v. *N.Y.C. Dep't of Educ.*, No. 21-1679, 2022 WL 16954360, at *1 (2d Cir. Nov. 16, 2022) (summary order) (internal quotation marks omitted) (quoting *Wernick* v. *Fed. Rsrv. Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir. 1996)). "To establish a prima facie violation under [the ADA or Section 504], a plaintiff must demonstrate '[i] that she is a qualified individual with a disability; [ii] that the defendants are subject to one of the Acts; and [iii] that she was denied the opportunity to participate in or

benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability.'" *Dean* v. *Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (quoting *Powell* v. *Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)).

"Courts in this circuit have recognized that a Section 504 claim may be predicated on the claim that a disabled student was 'denied access to a [FAPE], as compared to the free appropriate education non-disabled students receive.'" *C.L.* v. *Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir. 2014) (quoting *S.W. ex rel. J.W.* v. *Warren*, 528 F. Supp. 2d 282, 290 (S.D.N.Y. 2007)); *see also Close* v. *Bedford Cent. Sch. Dist.*, No. 23 Civ. 4595 (CS), 2024 WL 3427213, at *11 n.17 (S.D.N.Y. July 16, 2024) (recognizing the same for ADA claims). But because relief under the ADA and Section 504 "is conditioned on a showing of discrimination," establishing a *prima facie* case under the ADA or Section 504 "requires something more than proof of a mere violation of IDEA." *Schreiber* v. *E. Ramapo Cent. Sch. Dist.*, 700 F. Supp. 2d 529, 564 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Gabel ex rel. L.G.* v. *Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 334 (S.D.N.Y. 2005)).

That "something more" can include an allegation "that a school district acted with deliberate … indifference to the student's federally protected rights." *Schreiber*, 700 F. Supp. 2d at 564; *cf. A.J.T. ex rel. A.T.* v. *Osseo Area Schs.*, 605 U.S. 335, 345 (2025) (holding "that ADA and Rehabilitation Act claims based on educational services should be subject to the same standards that

11

apply in other disability discrimination contexts," and rejecting the Eighth Circuit's "bad faith or gross misjudgment rule"). (*See* Dkt. #25 ("Pl. Opp.") at 7-8 (arguing that Plaintiff has shown deliberate indifference)). "[D]eliberate indifference is demonstrated by showing that the defendant appreciated that its conduct would run a serious risk of violating federal rights, but continued the conduct anyway." *A.H.* v. *N.Y.C. Dep't of Educ.*, No. 24 Civ. 4828 (JGLC), 2025 WL 2773252, at *12 (S.D.N.Y. Sept. 29, 2025) (internal quotation marks omitted) (quoting *A.S.* v. *Mamaroneck Union Free Sch. Dist.*, No. 21 Civ. 6937 (CS), 2024 WL 308211, at *10 (S.D.N.Y. Jan. 26, 2024)).

###    2.    Plaintiff Has Failed to Plead That Defendants Acted with Deliberate Indifference

Plaintiff here advances conclusory, boilerplate allegations that Defendants violated the ADA and Section 504. (*See* FAC ¶¶ 65, 71). Beyond that, he argues that Defendants acted with deliberate indifference by staffing his resolution meeting — and other iBRAIN students' resolution meetings — with individuals who lacked the authority to settle the students' complaints. (Pl. Opp. 8 (citing FAC ¶¶ 94, 102)). He asserts that his allegations about DOE's interactions with the Resolution Meeting Parents and their counsel demonstrate "the sheer breadth of [DOE's] alleged misconduct." (*Id.*).

The Court disagrees on all fronts. For starters, the Court may not simply credit Plaintiff's conclusory allegations, even at this early stage of the litigation. *See Iqbal*, 556 U.S. at 681 (noting that the plausibility standard must be assessed after removing "conclusory" allegations). And Plaintiff's remaining allegations do not state a claim under either statute.

12

In an effort to establish deliberate indifference, Plaintiff focuses on the fact that DOE's representatives at the July 12 and July 16 resolution meetings lacked the authority to settle all of Plaintiff's claims. (FAC ¶¶ 94, 102; *see also* Pl. Opp. 8). But these allegations do not establish that DOE "appreciated that its conduct would run a serious risk of violating federal rights, but continued the conduct anyway." *A.H.*, 2025 WL 2773252, at *12 (internal quotation marks omitted) (quoting *A.S.*, 2024 WL 308211, at *10).

Plaintiff alleges that CSE District 9 representatives (i) attempted to schedule timely resolution meetings; (ii) received a request from counsel asking for a list of participants; (iii) appeared for resolution meetings the next day; (iv) were told that counsel was cancelling the meetings; and (v) reached back out less than a week later to reschedule the resolution session. (FAC ¶¶ 29, 85, 93-97). And CSE District 8 representatives allegedly (i) held resolution meetings at which DOE and the parents reached agreements and (ii) thereafter met with Resolution Meeting Parents' counsel. (*Id.* ¶¶ 90, 101, 103). Plaintiff's counsel contemporaneously asserted to representatives of both districts that the resolution meetings were not attended by the correct representatives. (*Id.* ¶¶ 96, 104).

But notably, nowhere does Plaintiff allege that Defendants knew their conduct risked violating federal rights. On the contrary, Plaintiff's allegations indicate that Defendants were quite mindful of Plaintiff's rights. For example, Defendants reached out to schedule resolution meetings within nine days after the Resolution Meeting Parents filed their DPCs (FAC ¶¶ 75-77, 83-84, 89), and

within two days of receiving emails from Plaintiff's counsel (*id.* ¶¶ 26-27).

Defendants made themselves available for resolution meetings the very next

day (*id.* ¶¶ 27, 83-84), and they repeatedly attempted to reschedule hearings

over the next week (*id.* ¶¶ 29, 101).  This all occurred despite the fact that

Plaintiff failed to attend any resolution meeting, as required.  (*See* SRO Dec. 7).

In short, Plaintiff's claims demonstrate that Defendants acted with

significant regard for Plaintiff's rights, and Plaintiff has not made sufficient

allegations to the contrary.  Read most generously, Plaintiff's allegations

suggest either that Defendants disagree with Plaintiff about who must attend

resolution meetings, or that they made certain mistakes when scheduling the

resolution meetings.  Either way, Plaintiff's allegations amount to, at most,

nothing more than an IDEA violation, which is not, on its own, actionable

under the ADA or Section 504.  *See Killoran* v. *Westhampton Beach Sch. Dist.*,

No. 22-204, 2023 WL 4503278, at *3 (2d Cir. July 13, 2023) (summary order)

("Evidence of an IDEA violation, without more, however, is insufficient to

demonstrate a violation under either [the ADA or Section 504].").  Put another

way, Plaintiff has not provided enough facts to "nudge[ ] [his] claims" of

deliberate indifference "across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 570.[4]

---

[4]    The Court pauses to add that it is not persuaded by Plaintiff's assertion that his allegations point to a "systematic[ ] depriv[ation]" of rights. (Pl. Opp. 8).  At most, Plaintiff's allegations relate to resolution meetings conducted for students from one school on two days in a single week in July 2024.  (FAC ¶¶ 83-103).  That is simply not enough.  *Cf. Equal Emp. Opportunity Comm'n* v. *Bloomberg LP*, 778 F. Supp. 2d 458, 480 (S.D.N.Y. 2011) (noting, in an employment discrimination case, that "[r]elying on a handful of individuals' statements does not amount to showing a pattern or practice of

## C.    Plaintiff Fails to State a Claim Under Section 1983

To state a claim under Section 1983 against a municipal defendant, a plaintiff must allege "[i] an official policy or custom that [ii] causes the plaintiff to be subjected to [iii] a denial of a constitutional right."  *Torraco* v. *Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Wray* v. *City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Monell* v. *Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

"Importantly, the denial of a [FAPE] has been held a constitutional deprivation which is actionable under Section 1983."  *M.H. ex rel. K.H.* v. *Mount Vernon City Sch. Dist.*, No. 13 Civ. 3596 (VB), 2014 WL 901578, at *8 (S.D.N.Y. Mar. 3, 2014) (citing *Quackenbush* v. *Johnson City Sch. Dist.*, 716 F.2d 141, 148 (2d Cir. 1983)); *see M.M.* v. *N.Y.C. Dep't of Educ.*, No. 15 Civ. 5846 (PKC), 2017 WL 1194685, at *14 (S.D.N.Y. Mar. 30, 2017) (noting that although "'[t]he Fourteenth Amendment does not protect a public education as a substantive fundamental right' … , 'the IDEA creates rights in favor of disabled children and their families enforceable through section 1983" (alteration adopted) (first quoting *Handberry* v. *Thompson*, 446 F.3d 335, 352 (2d Cir. 2006); then

---

intentional discrimination").  The Court will discuss Plaintiff's argument further in its *Monell* discussion.  *See infra* C.1.

15

quoting *D.D.* v. *N.Y.C. Bd. of Educ.*, 465 F.3d 503, 511 n.10 (2d Cir. 2006))).

"Accordingly, courts in this Circuit have held that a Section 1983 claim may be

predicated upon the plaintiff's deprivation of rights under the IDEA."  *D.F.* v.

*N.Y.C. Dep't of Educ.*, No. 24 Civ. 3087 (LJL), 2025 WL 1425752, at *12

(S.D.N.Y. May 16, 2025) (collecting cases).

Here, Plaintiff argues that he has adequately pleaded a Section 1983

claim for municipal liability under *Monell* and its progeny.  (Pl. Opp. 10-12).  In

particular, Plaintiff alleges that Defendants have a "practice and policy of not

settling tuition cases at resolution [meetings] and, instead, of using the

resolution period as a means of further delaying the ultimate resolution of

[DPCs]."  (FAC ¶ 74).  More specifically, Plaintiff argues that Defendants have a

"*de facto* policy" of "refus[ing] to properly schedule resolution meetings staffed

with persons with authority to settle the outstanding issues that were raised in

each of the relevant DPCs."  (*Id.* ¶¶ 107-110).  These allegations do not make

out a Section 1983 claim for two independent reasons.

### 1.    Plaintiff Fails to Plead a Policy or Custom of Staffing Resolution Meetings with Improper District Representatives

*First*, as discussed above, *see supra* note 4, the FAC fails to plead a

custom or policy with respect to DOE's participation in resolution meetings.

Plaintiff alleges deficiencies only as to resolution meetings conducted (i) on two

days, (ii) involving students from one school, and (iii) in two districts.  (FAC

¶¶ 83-103).  The lone allegation suggesting that the practice occurred more

than twice is the CSE District 8's representative alleged statement to Plaintiff's

16

counsel that "it is standard practice … for her to be the sole representative on … calls with parents" on behalf of her district.  (*Id.* ¶ 103).

These threadbare allegations cannot establish an official policy or custom across DOE.  *See Torraco*, 615 F.3d at 140.  When, as here, the alleged policy is informal, the practice must be "so persistent and widespread" to "impl[y] the constructive knowledge of policy-making officials."  *Vasquez ex rel. J.V.* v. *N.Y.C. Dep't of Educ.*, No. 22 Civ. 3360 (PAC), 2024 WL 1332822, at *5 (S.D.N.Y. Mar. 28, 2024) (internal quotation marks omitted) (quoting *BD* v. *DeBuono*, 130 F. Supp. 2d 401, 438 (S.D.N.Y. 2000)).  Plaintiff's allegations — which, even crediting the unsworn, offhand statement of a CSE District 8 representative, provide detailed allegations about only two districts that hosted two sets of meetings on two days — fall short of that standard.  Indeed, "while there is no 'magic number' of instances of unconstitutional conduct that will suffice to permit the inference of a pattern, courts in the Second Circuit have found that two incidents did not support an inference of a policy or custom under *Monell*."  *Brown* v. *Fire Dep't of N.Y.*, No. 19 Civ. 2400 (LDH), 2020 WL 6940992, at *9 (E.D.N.Y. Nov. 25, 2020) (citing *Norton* v. *Town of Islip*, No. 12 Civ. 4463 (PKC), 2016 WL 264930, at *7 (E.D.N.Y. Jan. 21, 2016), *aff'd*, 678 F. App'x 17 (2d Cir. 2017) (summary order)).

In this regard, the instant case is far different from *D.F.* v. *New York City Department of Education*, a case in which a sister court in this District found a valid Section 1983 claim under *Monell* because the plaintiff alleged that DOE had "informed" the plaintiff that DOE *as a whole* "d[id] not offer" a specific type

17

of instruction or therapy.  *D.F.*, 2025 WL 1425752, at *2-4, 13.  Plaintiff here offers no comparable allegations of widespread actions.

### 2.     Plaintiff Fails to Plead a Violation of a Constitutional Right

*Second*, even if Plaintiff had sufficiently alleged that DOE had a policy or custom of staffing resolution meetings with improper district representatives, the Court would still hold that such a policy did not violate students' constitutional rights under Section 1983.  In *Quackenbush* v. *Johnson City School District*, the Second Circuit stated, in the context of discussing the IDEA's predecessor, that Section 1983 "suppl[ies] [a] right of action to a plaintiff who has been denied procedural safeguards under [the statute] and who, as a result thereof, has not received findings and decision following the impartial due process administrative hearing contemplated by [the statute]." 716 F.2d at 148.

Put another way, if DOE denies a "procedural safeguard" under IDEA that prevents a student from receiving an "administrative remed[y] to which she was entitled under the IDEA," that student may have a valid Section 1983 action.  *Conway* v. *Bd. of Educ. of Northport-E. Northport Sch. Dist.*, No. 13 Civ. 5283 (SJF) (WDW), 2014 WL 3828383, at *15-16 (E.D.N.Y. Aug. 1, 2014); *see also Streck* v. *Bd. of Educ. of E. Greenbush Sch. Dist.*, 280 F. App'x 66, 68 (2d Cir. 2008) (summary order) (dismissing a Section 1983 case because the plaintiffs "were afforded a hearing before an impartial hearing officer and review by a state review officer").  But the denial of a procedural safeguard, when there is no allegation that such a denial somehow led to the wholesale

18

denial of a remedy under the IDEA, is insufficient. *See Smith* v. *Guilford Bd. of Educ.*, 226 F. App'x 58, 63 (2d Cir. 2007) (summary order) ("To state a cognizable procedural due process claim, however, Plaintiffs must also allege that [the student] was deprived in some manner of a property interest in a FAPE by Defendants' conduct."); *cf. T.K.* v. *N.Y.C. Dep't of Educ.*, 810 F.3d 869, 875 (2d Cir. 2016) ("Not every violation of [the IDEA's] procedural safeguards rises to the level of the denial of a FAPE."); 20 U.S.C. § 1415(f)(3)(E)(ii) (explaining when "procedural inadequacies" may constitute a denial of a FAPE).

Here, Plaintiff focuses on alleged deficiencies in one procedural safeguard, the resolution meeting. (FAC ¶¶ 74, 107-110; Pl. Opp. 10-12). These allegations can only amount to a constitutional violation if, as a result of the deficiencies in the resolution meeting, Plaintiff was denied a remedy to which he was entitled under the IDEA. *See Conway*, 2014 WL 3828383, at *15-16. But Plaintiff cannot allege this required connection.

To be sure, Plaintiff attempts to meet this standard by arguing that the allegedly improper resolution meetings "le[d] to the improper dismissal of his DPC." (Pl. Opp. 11-12). But this assertion is belied by the exhibits to Plaintiff's own FAC. Those exhibits make clear that the IHO dismissed the DPC because *Plaintiff* did not appear at the resolution meeting and "ha[d] not engaged in th[e] process in good faith" (IHO Dec. 5-6), and not because of any action taken by DOE. What is more, the SRO upheld the IHO's decision on the same basis. (SRO Dec. 7). In other words, Plaintiff's actions, not DOE's, ultimately doomed his DPC, a fact that is fatal to his Section 1983 claim as well. That is because,

19

to the extent that anyone "deprived" Plaintiff "of a properly interest in a FAPE," it was Plaintiff himself.  *Smith*, 226 F. App'x at 63.

Of course, the result on this prong might be different if Plaintiff had alleged, for example, (i) that DOE's improper representative at the resolution meeting biased the IHO, or (ii) that the IHO dismissed Plaintiff's claims because he *attended* a resolution meeting with an improper DOE representative, or even (iii) that the IHO dismissed the DPC because DOE refused to schedule or reschedule the resolution meeting.  But Plaintiff makes no such allegations, and his own submissions tell the opposite story.  *See C.Q.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 3 (JGK), 2024 WL 4979293, at *11 (S.D.N.Y. Dec. 3, 2024) (dismissing a Section 1983 claim because "the plaintiffs ha[d] not alleged that the IHO was biased or that the proceedings [before the IHO] were a sham").  Accordingly, Plaintiff "ha[s] not alleged that [he] w[as] 'denied the procedural or administrative remedies that IDEA provides,'" and thus "ha[s] not pleaded a section 1983 claim."  *Id.* (quoting *Jenn-Ching Luo* v. *Baldwin Union Free Sch. Dist.*, No. 10 Civ. 1985 (JS) (AKT), 2011 WL 941263, at *6 (E.D.N.Y. Mar. 15, 2011)).

## CONCLUSION

For the reasons explained above, Defendants' motion to partially dismiss the FAC is GRANTED.  Plaintiff's claims under Section 504, the ADA, and Section 1983 are dismissed with prejudice.  Plaintiff has not sought leave to amend and has already been granted leave to amend once; therefore, further leave to amend is DENIED.  *See TechnoMarine SA* v. *Giftports, Inc.*, 758 F.3d

20

493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [he] fails to specify ... how amendment would cure the pleading deficiencies in [the] complaint."); *Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1132 (2d Cir. 1994) ("Although federal courts are inclined to grant leave to amend following a dismissal order, we do not deem it an abuse of the district court's discretion to order a case closed when leave to amend has not been sought.")).

The Clerk of Court is directed to terminate the pending motion at docket entry 23.  The parties shall file a letter regarding proposed next steps in the litigation on or before **April 17, 2026**.

SO ORDERED.

Dated:        March 29, 2026
              New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

21